EDITEK, INC., Plaintiff,

v.

MORGAN CAPITAL, L.L.C., Alex Bistricer and David Bistricer, Defendants.

Civ. No. 97–253/RHK/JMM.

United States District Court, D. Minnesota.

Aug. 4, 1997.

Frank A. Taylor and Gregory J. Schaefer, Hinshaw and Culbertson, Minneapolis, MN, for Plaintiff.

George F. McGunnigle and Michael A.G. Korengold, Leonard, Street and Deinard, Minneapolis, MN; and Dennis J. Block, Irwin H. Warren, and Michelle L. Roth, Weil, Gotshal and Manges LLP, New York City, for Defendants.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

Plaintiff Editek, Inc. ("Editek") brings this action against Defendants Morgan Capital, L.L.C. ("Morgan Capital"), and Alex and David Bistricer ("the Bistricers") (collectively "Defendants"), alleging violation of Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), in connection with Defendants' sale of Editek stock. This matter is before the Court on Defendants' Motion to Dismiss the Complaint for Improper Venue, pursuant to Fed.R.Civ.P. 12(b)(3), for Failure to State a Claim Upon Which Relief May Be Granted, pursuant to Fed.R.Civ.P. 12(b)(6), and for Failure to Comply with Rule 23.1, pursuant to Fed.R.Civ.P.41(b). For the reasons set forth below, this Court will grant

Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted, and will deny Defendants' other Motions as moot.

## Background

### I. *The Parties*

Editek is a Delaware Corporation primarily engaged in the business of medical and chemical testing. (Compl.¶ 2.) Morgan Capital is a limited liability corporation with offices in Brooklyn, New York. (*Id.* ¶ 3.) On July 2, 1996, the Bistricers became members of the Board of Directors of Editek. (*Id.* ¶ 19.)

### II. *The Editek Stock*

On February 1, 1996, Editek issued shares of its Convertible Preferred Stock ("Preferred Stock") in an offering conducted under Regulation D of the Securities Act of 1933 ("the Offering"). (Compl.¶ 11.) "Each Preferred Share was convertible at the option of the holder at a price equal to the average closing price of the shares of Common Stock of Editek (the "Common Stock") for the five trading day period preceding the date" the holder gave notice of conversion to Editek. (*Id.* ¶ 12.) This right to convert was exercisable sixty days *after* the issuance of the shares. (*See id.;* Block Aff. Ex. 1 at 4(c) (Certificate of Designations of Preferred Stock of Editek) ("The period commencing the sixtieth (60th) day following the First Issuance Date and ending on the Conversion Termination Date shall be referred to as the 'Conversion Period.' ").)

Morgan Capital purchased Preferred Stock in the Offering. (Compl.¶ 13.) The shares of Common Stock that it would have received upon conversion of its Preferred Stock at the time of purchase would have been less than ten percent of the outstanding shares of Editek's Common Stock. (*Id.*)

On May 1, 1996, Morgan Capital converted all of its Preferred Stock and received shares of Editek's Common Stock representing more than ten percent of the outstanding shares of Common Stock. (Compl.¶ 15.) Shortly thereafter, Morgan Capital filed the appropriate forms with the SEC to reflect this fact. (*See id,* ¶ 16.)

In May and June of 1996, Morgan Capital sold a portion of its shares of Common Stock.

(Compl.¶ 17.) Defendants realized at least $500,000 in profits as a result of these sales. (*Id.* ¶ 18.) Editek alleges that this conduct violated federal securities laws and seeks disgorgement of Defendants' profits, an accounting of Defendants' profits, and costs and attorneys' fees. (*See* Compl. at 5.)

## Discussion

The Court begins with Defendants' Motion under Fed.R.Civ.P. 12(b)(6).

### I. *Standard of Review*

When reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts as true the material facts alleged in the complaint and considers the allegations therein in the light most favorable to the non-movant. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The court should not grant the motion unless it appears "beyond a doubt that the plaintiff could prove no set of facts which would entitle" her to relief. *Roe v. Norwest Bank,* 107 F.3d 1297, 1304 (8th Cir.1997); *see also Coleman v. Watt,* 40 F.3d 255, 258 (8th Cir.1994); *United States v. Aceto Agric. Chem. Corp.,* 872 F.2d 1373, 1376 (8th Cir.1989). The issue is not whether Editek will ultimately prevail, but whether it is entitled to offer evidence in support of its claim. *Aceto,* 872 F.2d at 1376 (citing *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686).

When assessing a motion to dismiss under Rule 12(b)(6), this Court may consider materials attached to the complaint as exhibits, *Peter v. Johnson,* 958 F.Supp. 1383, 1389 (D.Minn.1997) (citing *County of St. Charles v. Missouri Family Health Council,* 107 F.3d 682 (8th Cir.1997)), or referred to in the Complaint, if those documents are "integral to the complaint." *See Brogren v. Pohlad,* 933 F.Supp. 793, 798 (D.Minn.1995) (reviewing documents referred to, but not attached to, the complaint when deciding a motion to dismiss a securities case). If the Court considers additional materials, the motion to dismiss must be treated as a motion for summary judgment. *Peter,* 958 F.Supp. at 1389; Fed.R.Civ.P. 56.

In deciding this Motion to Dismiss, this Court has considered only the Complaint itself, and documents referred to within the Complaint. Therefore, the Court will not convert this Motion to one for Summary Judgment.

## II. *Section 16(b)*

Editek brings this action pursuant to Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), which provides, in relevant part:

> For the purpose of preventing the unfair use of information which may have been obtained by [a] beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months....

15 U.S.C. § 78p(b) ("Section 16(b)"). Section 78p(a) defines "beneficial owner" for these purposes as "[e]very person who is directly or indirectly the beneficial owner of more than 10 per centum of any class of equity security (other than an exempted security) which is registered pursuant to section 78l" of the Act. *Id.* § 78p(a); *see also* 17 C.F.R. § 240.16a–1 ("Terms defined in this rule shall apply solely to section 16 of the Act and the rules thereunder. These terms shall not be limited to section 16(a) of the Act but also shall apply to all other subsections under section 16 of the Act.")

Section 16(b) was enacted to prevent the use of inside information which one could obtain because of a relationship to the corporation. *See* 15 U.S.C. § 78p(b); *Schaffer v. Dickstein & Co.*, No. 95 Civ. 7934(BSJ), 1996 WL 148335, at *2 (S.D.N.Y.1996) (recognizing that stated purpose of Section 16(b) is to prevent use of inside information). Beneficial owners are considered "insiders" because "the size of their holdings afford[s] the po-

tential for access to corporate information." *Foremost–McKesson v. Provident Secs. Co.*, 423 U.S. 232, 253, 96 S.Ct. 508, 520, 46 L.Ed.2d 464 (1976).

The statute makes explicit that it "shall *not* be construed to cover any transaction where such beneficial owner was not such *both at the time of the purchase and sale, or the sale and purchase,* of the security involved." 15 U.S.C. § 78p(b) (emphasis added). The United States Supreme Court has clarified that the actual purchase which makes a company or person a beneficial owner does not constitute one of the requisite purchases for liability under Section 16(b). *See Foremost–McKesson,* 423 U.S. at 253–54, 96 S.Ct. at 520–21. The Court explained that it would be inconsistent with the purpose of the statute

> to impose liability on the basis of a purchase made when the percentage of stock ownership requisite to insider status had not been acquired. To be sure, the possibility does exist that one who becomes a beneficial owner by purchase will sell on the basis of information attained by virtue of his newly acquired holdings. But that purchase itself was not one posing dangers that Congress considered intolerable, since it was made when the purchaser owned no shares or less than the percentage deemed necessary to make him an insider.

*Id.,* 423 U.S. at 254, 96 S.Ct. at 521; *see also* 17 C.F.R. § 240.16a–2(b)(c) ("The transaction that results in a person becoming a ten percent beneficial owner is not subject to section 16 of the Act unless the person is otherwise subject to section 16 of the Act.") Thus, having *already attained* the status of beneficial owner, the person or entity must engage in a sale and purchase (or purchase and sale) within six months to violate Section 16(b). The time at which Morgan Capital became a beneficial owner is the heart of the parties' dispute.

## III. *When Morgan Capital Became a Beneficial Owner*

Editek's Complaint alleges as follows:

14. As a result of a decline in the price of the Common Stock, on around March 28, 1996, Morgan Capital had the right to acquire within 60 days more than ten percent

of the outstanding shares of the Common Stock based on the prevailing price for the Common Stock.

15. On May 1, 1996, Morgan Capital converted all of the Preferred Shares held by it and received shares of Common Stock representing more than ten percent of the outstanding shares of Common Stock.

16. In May or June 1996, Morgan Capital filed with the S.E.C. a Form 3 and a Form 13(d) to reflect the fact that it was a beneficial owner of more than ten percent of the outstanding shares of Common Stock.

17. On five different dates in May and June 1996, Morgan Capital sold a portion of its shares of Common Stock. . . .

(Compl. ¶¶ 14–17.)

■ Editek argues that Morgan Capital became a beneficial owner for purposes of Section 16(b) on March 28, 1996, when, as a result of the declining price of Editek Common Stock, it had the *right* to obtain more than ten percent of the outstanding stock by converting its Preferred Stock. Thus, Editek maintains that Morgan Capital was a beneficial-owner when it actually exercised its conversion and purchased the Common Stock on May 1, making the May and June sales illegal under Section 16(b). (*See* Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. at 11–13.) ("Pl.'s Mem.")

Morgan Capital responds that it did not become a beneficial owner until after it exercised its conversion rights on May 1. (*See* Defs.' Mem. in Supp. of Mot. to Dismiss the Compl. at 10.) Thus, the Complaint only alleges that Morgan Capital engaged in the *sale* of stock while a beneficial owner, not the sale *and* purchase required under Section 16(b). (*See* Defs.' Reply Mem. at 11–15).

Editek bases its argument on the following language from the Exchange Act Rules:

Terms defined under this rule shall apply solely to section 16 of the Act and the rules thereunder. These terms shall not be limited to section 16(a) of the Act but also shall apply to all other subsections under section 16 of the Act.

(a) The term beneficial owner shall have the following applications:

(1) Solely for the purposes of determining whether a person is a beneficial owner of more than ten percent of *any class of equity securities* registered pursuant to section 12 of the Act, the term *"beneficial owner" shall mean any person who is deemed a beneficial owner pursuant to section 13(d) of the Act and the rules thereunder* . . .

17 C.F.R. § 240.1.16a–1(a)(1) (emphasis added). Section 13(d) states:

For the purpose of sections 13(d) and 13(g) of the Act a beneficial owner of a security includes any person who, directly, or indirectly, through any contract. arrangement, understanding, relationship, or otherwise has or shares:

(1) Voting power which includes the power to vote, or to direct the voting of, such security; and/or,

(2) Investment power which includes the power to dispose, or to direct the disposition of, such security.

. . .

*Id.* § 240.13d–3(a)(1) & (2). The Rule further states that

a person shall be deemed to be the beneficial owner of a security, subject to the provisions of paragraph (b) of this rule, *if that person has the right to acquire beneficial ownership of such security,* as defined in Rule 13d–3(a) . . . *within sixty days,* including but not limited to any right to acquire . . . [t]hrough the conversion of a security.

*Id.* § 240.13d–3(b) ("the ownership provision"). Pursuant to the ownership provision, Editek contends that Morgan Capital was a beneficial owner as of March 28, 1996.

In its Memorandum to this Court, Editek states that "it has never claimed that Morgan Capital was a ten percent beneficial owner of *Preferred Stock.* Editek simply argues that Morgan Capital was a beneficial owner because it had a *right to acquire beneficial ownership of Editek Common Stock within sixty days after issuance of Preferred Stock* through the phase-in of its conversion right and the prevailing stock price for Editek's Common Stock." [1] (Pl.'s Mem. at 13–14) (emphasis added). The Court disagrees.

---

1. Editek presumably makes this argument because ownership of the Preferred Stock itself, which is non-voting, would undisputedly fail to

### "Sixty-Day Rule"

Paragraph 12 of the Complaint plainly states: "The right to convert the Preferred Shares was exercisable 60 days *after* issuance of the shares." (Compl. ¶ 12.) Moreover, the stock agreement itself states that the holder "shall have no right to convert the stock" until the beginning of the Conversion Period, which is defined as the "period commencing on the sixtieth (60th) day following the First Issuance Date." (Block Aff. Ex. 4.) Thus, there was only one day—the sixtieth day—on which Morgan Capital could actually convert its Preferred Stock *within* sixty days of issuance. Editek's Complaint contains no allegation that the price of Common Stock on the sixtieth day was low enough that Morgan Capital could have become an owner often percent of the shares of Editek's Common Stock by converting its Preferred Stock on that day. In fact, the Complaint alleges only one date, March 28, 1996, on which the price of the Common Stock was low enough that Morgan Capital's conversion of its Preferred Stock would actually have resulted in its ten percent ownership of Common Stock. On that date, however, Morgan Capital's Preferred Stock was still not exercisable because the Conversion Period had not yet started.

Editek's theory has Morgan Capital floating in and out of beneficial-ownership status depending on the price of Common Stock. Even if the Court felt the law supported such a scenario, the Complaint is simply devoid of allegations consistent with it. Editek has crafted an argument in which it has one day to comply with the requirements of both Rule 13d and the terms of the Preferred Stock itself: the sixtieth day. There is no mention of this day in the Complaint. Accordingly, the Complaint has not alleged facts which, if proven, could demonstrate that Morgan Capital had a right to acquire more than ten percent of the outstanding shares of Common Stock.

### "Floating Exercise Price"

Irrespective of the problems with the sixty-day rule, Editek still could not satisfy the

---

ownership provision based on the facts alleged in the Complaint.

The Preferred Stock did not have a fixed priced. "Each Preferred Share was convertible at the option of the holder at a price equal to the average closing price of the shares of the Common Stock ... for the five trading day period preceding the date notice of conversion was given to Editek by such holder." (Compl. ¶ 12.) The SEC has made clear that

> a *right with a floating exercise price* is not required to be reported and will *not be deemed to be acquired* or purchased, for Section 16 purposes, until the purchase price of the underlying securities becomes fixed or established, which commonly occurs at exercise. Thus, *a right to purchase an equity security is deemed acquired as of the date the exercise or conversion price becomes fixed.*

*See* Exchange Act Release No. 28869, Fed. Sec. L. Rep. (CCH) "New SEC Rulings, Insider Reporting—Short Swing Trading", 2–20–91, ¶ 84,709 at 81, 252 ("Exchange Act Release") (emphasis added). As the average of the preceding five days, the price of the Preferred Stock could not be determined or fixed until the date of purchase. Thus, the right referred to in the ownership provision could not be attributed to Morgan Capital until the day it converted its Preferred Stock to Common Stock: May 1, 1996. *See* SEC No Action Letter, *Realty South Investors, Inc.,* 1992 WL 139152 (S.E.C. June 17, 1992) (finding that interim price fluctuations of the common stock into which preferred stock is convertible do not implicate Section 16 ). On that day, Morgan Capital became a beneficial owner, and no sooner.

### IV. *No Matching Short–Swing Transactions are Alleged*

#### *Morgan Capital*

As previously noted, for liability to attach under Section 16(b), a party must be a beneficial owner before the purchase occurs in a purchase-sale sequence. *See Foremost–*

---

confer beneficial ownership status on Defendants. *See. e.g.,* 17 C.F.R. § 240.13d–1 (stating that the term "equity security" for these purposes "shall not include securities of a class of non-voting securities.") Thus, Editek turns the Court's focus away from the characteristics of the Preferred Stock itself, and toward the access to Common Stock it provides its holder.

*McKesson,* 423 U.S. at 252, 96 S.Ct. at 519. For the complaint at issue to state a claim, Editek must allege that *three* transactions occurred: (1) the acquisition of securities that resulted in Morgan Capital being a beneficial owner for Section 16 purposes; *and* (2) a sale or purchase of the security; and, within six months thereafter, (3) a matching purchase or sale of the security. These three transactions are not alleged.

■ The Complaint alleges only that: (1) Morgan Capital converted its Preferred Stock to Common Stock, (*see* Compl. ¶ 15), which this Court has determined conveyed, for the first time, beneficial-ownership status on Morgan Capital, and (2) Morgan Capital subsequently sold a portion of its shares of Common Stock. (*See* Compl. ¶ 17.) No matching purchase is alleged. Therefore, Plaintiff's complaint has not alleged the requisite conduct which, if proven, could establish Section 16(b) liability for Morgan Capital. Simply put, Editek has accused Defendants of nothing illegal.

### The Bistricers

The Complaint alleges that the Bistricers "control Morgan Capital." (Compl. ¶ 6.) All of the conduct alleged against the Bistricers is so alleged in their capacity as control persons of Morgan Capital. Because the Court has determined that the Complaint fails to allege conduct giving rise to Section 16(b) liability as to Morgan Capital, the Court also finds that the Complaint has failed to allege conduct giving rise to Section 16(b) liability on the part of the Bistricers. Accordingly, this Court will grant Defendants' Motion to Dismiss the Complaint for Failure to State a Claim Upon Which Relief Can Be Granted, as to all Defendants, and the Court need not address the other Motions presented by Defendants.

### Conclusion

Accordingly, based on the foregoing, and upon all the files, records and proceedings herein, **IT IS ORDERED** that:

(1) Defendants' Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. No. 9) is **GRANTED;** and

(2) Defendants' Motion to Dismiss the Complaint pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure (Doc. No. 9) is **DENIED AS MOOT;** and

(3) Defendants' Motion to Dismiss the Complaint pursuant to Rule 41(b) of the Federal Rules of Civil Procedure (Doc. No. 9) is **DENIED AS MOOT;** and

(4) Plaintiff's Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**