# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 97-3400MN

———————

Editek, Inc.,

         Appellant,

  v.

Morgan Capital, L.L.C.; Alex
Bistricer; David Bistricer,

         Appellees.

\*
\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the District
\*   of Minnesota.
\*
\*
\*

———————

Submitted: May 15, 1998
Filed: July 24, 1998

———————

Before RICHARD S. ARNOLD and FAGG, Circuit Judges, and BOGUE,[*] District
    Judge.

———————

FAGG, Circuit Judge.

Editek, Inc. brought this lawsuit against Morgan Capital, L.L.C. and its officers,
Alex and David Bistricer (collectively Morgan Capital), under § 16(b) of the Securities
Exchange Act of 1934 (the 1934 Act), 15 U.S.C. § 78p(b), to recover claimed short-
swing profits. Section 16(b) applies only to corporate insiders: directors, officers, and

———————

[*]The Honorable Andrew W. Bogue, United States District Judge for the District
of South Dakota, sitting by designation.

beneficial owners of more than ten percent of a corporation's registered equity securities (ten percent beneficial owners). Only the ten percent beneficial owner category is involved here. Based on a misreading of the applicable rules, the district court concluded Editek's complaint failed to allege facts that, if proven, would make Morgan Capital a beneficial owner at the legally required time. On that basis, the district court granted Morgan Capital's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Editek appeals. We reverse and remand for further proceedings.

The purpose of § 16(b) is to prevent corporate insiders from exploiting inside information to turn a quick profit trading in their company's stock. See 15 U.S.C. § 78p(b) (1994); Foremost-McKesson, Inc. v. Provident Sec. Co., 423 U.S. 232, 234 (1976). To achieve this purpose, Congress enacted a flat rule: any profit realized by an insider "from any purchase and sale, or any sale and purchase, of any equity security of such issuer . . . within any period of less than six months, . . . shall inure to and be recoverable by the issuer." 15 U.S.C. § 78p(b). A further provision of the statute applies only to ten percent beneficial owners. To be liable under § 16(b), a ten percent beneficial owner must have been such "both at the time of the purchase and sale, or the sale and purchase, of the security involved." Id. As the Supreme Court has made clear, to be a ten percent beneficial owner "at the time of the purchase," a person must have already become a ten percent beneficial owner before the purchase. See Foremost-McKesson, 423 U.S. at 249-50. Because an owner below the statutory threshold presumptively lacks access to inside information, the acquisition that takes a buyer above ten percent ownership does not count as a "purchase" matchable against a later sale for § 16(b) purposes. See id. at 253-54 & n.28; 17 C.F.R. § 240.16a-2(c) (1997).

With these principles in mind, we set forth the relevant background, accepting as true the facts asserted in Editek's complaint and construing the complaint in the light most favorable to Editek. See Doe v. Norwest Bank Minnesota, N.A., 107 F.3d 1297, 1303-04 (8th Cir. 1997). Around February 1, 1996, Editek issued shares of preferred

-2-

stock, convertible into Editek common stock, and sold some shares to Morgan Capital in a private placement. Editek acknowledges in its brief that the preferred shares were nonvoting. Thus, only the underlying common stock, not the preferred stock, counts for purposes of determining Morgan Capital's ten percent beneficial ownership status. See Ownership Reports and Trading By Officers, Directors and Principal Security Holders, Exchange Act Release No. 28,869, [1990-1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 84,709, at 81,252 n.36 (Feb. 8, 1991). Morgan Capital had the right to convert its preferred stock into Editek common stock beginning sixty days after issuance of the preferred stock. Despite the complaint's vagueness about the issuance date, the parties now agree March 30 marked the start of the conversion period. The conversion price floated: the number of common shares Morgan Capital would acquire at conversion would be based on the average closing price of Editek common stock for the five trading days just before the conversion date. In other words, as the price of Editek common stock dropped, the number of common shares Morgan Capital's preferred stock would buy increased. Around March 28, 1996, the price of Editek common stock fell low enough that Morgan Capital's preferred stock was worth more than ten percent of the outstanding shares of Editek's common stock. On May 1, 1996, Morgan Capital received more than ten percent of Editek's outstanding common stock when it exercised its conversion right. According to Editek, this conversion was the "purchase" matchable against later sales for § 16(b) purposes. Later that month and the next, Morgan Capital sold part of its newly acquired Editek common stock, realizing a profit of at least $500,000.

We review de novo a Rule 12(b)(6) dismissal, affirming "only if 'it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief.'" Doe, 107 F.3d at 1304 (quoting Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994)). In other words, dismissal under Rule 12(b)(6) is proper "only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations." Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995) (internal quotations omitted). Applying this standard, the district court concluded

Editek could not show that Morgan Capital was a beneficial owner of Editek common stock before the conversion. In the district court's view, Editek's complaint alleged a transaction that made Morgan Capital a ten percent beneficial owner--the conversion itself--followed by profitable sales. Because such conduct is not unlawful, the district court dismissed Editek's complaint. See Editek, Inc. v. Morgan Capital, L.L.C., 974 F. Supp. 1229, 1234 (D. Minn. 1997).

The district court's decision turns entirely on the term *beneficial owner*, which the governing regulations define in two different ways. For purposes other than determining ten percent beneficial ownership, "the term *beneficial owner* shall mean any person who . . . has or shares a direct or indirect pecuniary interest in the equity securities . . . ." 17 C.F.R. § 240.16a-1(a)(2). For the purpose of determining ten percent beneficial ownership, the meaning of *beneficial owner* is a bit more complicated. Rule 16a-1 states:

> Solely for purposes of determining whether a person is a beneficial owner of more than ten percent of any class of equity securities registered pursuant to section 12 of the [1934] Act, the term "beneficial owner" shall mean any person who is deemed a beneficial owner pursuant to section 13(d) of the Act and the rules thereunder . . . .

Id. § 240.16a-1(a)(1). Turning to the rules under § 13(d) of the 1934 Act, we find two relevant provisions. First, a beneficial owner of a security includes any person who has voting power or investment power in relation to the security. See id. § 240.13d-3(a). More importantly for our purposes, "[a] person shall be deemed to be the beneficial owner of a security . . . if that person has the right to acquire beneficial ownership of such security, as defined in Rule 13d-3(a) (§ 240.13d-3(a)) within sixty days . . . (B) through the conversion of a security . . . ." Id. § 240.13d-3(d)(1)(i)(B). We will refer to this last definition as the "within sixty days" rule.

The district court gave two explanations why it concluded Editek could not prove any set of facts that would make Morgan Capital a beneficial owner before the conversion. The first is based on a misunderstanding of the "within sixty days" rule. From the way the district court applied the rule, the court must have read it as saying the right to acquire beneficial ownership within sixty days through a conversion means the right to acquire this ownership within sixty days of the issuance of the convertible securities. Reading the rule the same way, Editek argued Morgan Capital was a beneficial owner of Editek common stock before the conversion "because [Morgan Capital] had a right to acquire beneficial ownership of Editek Common Stock within sixty days after issuance of [the] Preferred Stock." Editek, 974 F. Supp. at 1232 (emphasis and internal quotations omitted). According to Editek's complaint, however, the preferred shares were convertible, not *within* sixty days of issuance, but beginning sixty days *after* issuance--that is, on the sixtieth day following the date of issuance. See id. at 1233. The district court thus concluded Morgan Capital could not be proven a beneficial owner before the conversion under the "within sixty days" rule. See id. The district court rejected Editek's contention that Morgan Capital was a beneficial owner on March 28 because the conversion right was not immediately exercisable on that date. See id.

In our view, the district court's interpretation of the "within sixty days" rule is at odds with the rule's purpose. Section 13(d) of the 1934 Act, under which the rule was enacted, requires persons who acquire beneficial ownership of more than five percent of certain classes of securities to report their purchase to the issuer, to the exchanges where the securities are traded, and to the Securities and Exchange Commission (SEC). See 15 U.S.C. § 78m(d)(1) (1994). The purpose of this requirement is to alert the issuing company, the market, and the SEC to transactions that might change or influence the control of the company. See id. § 78m(d)(6)(D). The "within sixty days" rule should be read with this forward-looking purpose in mind. An illustration will show why. Suppose Morgan Capital's nonvoting preferred stock had been convertible beginning ninety days after issuance. Suppose further that on the

first possible conversion date, the preferred stock would be worth more than five percent of Editek's voting common stock. Three days before that date, Morgan Capital sells its preferred stock to a buyer. Under the district court's reading of the "within sixty days" rule, the buyer would have no duty to report its purchase to Editek, the stock exchange, or the SEC, even though the buyer would have a right exercisable in three days to acquire a potentially control-influencing stake in Editek's voting securities.

We think the "within sixty days" rule means just what it says. The SEC does also:

> The Commission is . . . mindful that as the point in time [at] which the right to acquire may come to fruition is extended into the future the . . . right's ability to influence control is correspondingly attenuated. When sixty days or less are left until the right to acquire may be exercised, the Commission believes that the ability of the holder of such right to effect control is sufficient to warrant the imposition of an obligation to file under Rule 13d-1.

Filing and Disclosure Requirements Relating to Beneficial Ownership, Exchange Act Release No. 14,692, [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 81,571, at 80,310 (Apr. 21, 1978). Applied here, the "within sixty days" rule makes Morgan Capital a beneficial owner of Editek common stock on every day within sixty days of every day on which Morgan Capital had the right to acquire Editek common stock through conversion--including March 28. Of course, whether a beneficial owner under the "within sixty days" rule is also a ten percent owner, and thus an insider subject to § 16(b), is a separate matter.

We turn next to the second basis for the district court's conclusion. Noting that the conversion price floated, the district court found relevant the following passage from an SEC release:

[A] right with a floating exercise price . . . will not be deemed to be acquired or purchased, for Section 16 purposes, until the purchase price of the underlying securities becomes fixed or established, which commonly occurs at exercise. Thus, a right to purchase an equity security is deemed acquired as of the date the exercise or conversion price becomes fixed, and the acquisition, absent an exemption, would be matchable for Section 16(b) purposes with a disposition within six months of the fixing of the price.

[1990-1991 Transfer Binder] Fed. Sec. L. Rep. ¶ 84,709, at 81,265. As we have just explained, under the "within sixty days" rule Morgan Capital's claimed beneficial ownership before the conversion depended on its having a right to acquire such ownership within a stated time. Based on the quoted passage, the district court concluded Morgan Capital did not gain the right referred to in the "within sixty days" rule until the conversion itself, so it could not have been a beneficial owner before the conversion. See Editek, 974 F. Supp. at 1233.

Although this conclusion follows logically from the quoted passage, it contradicts the conclusion dictated by the "within sixty days" rule itself, under which Editek's complaint would make Morgan Capital a beneficial owner of Editek common stock well before the conversion date. The quoted language is not at odds with the "within sixty days" rule, however. The SEC is simply talking about something other than determining ten percent beneficial ownership. Again, for those other purposes, the term *beneficial owner* means a person who has a direct or indirect pecuniary interest in registered equity securities. See 17 C.F.R. § 240.16a-1(a)(2). With that in mind, and taking into consideration the quoted passage's context, the SEC's meaning becomes apparent.

The passage is lifted from a lengthy discussion of derivative securities. See [1990-1991 Transfer Binder] Fed. Sec. L. Rep. ¶ 84,709, at 81,258-81,266. A convertible security is a type of derivative. See 17 C.F.R. § 240.16a-1(c). To own a

derivative security is to have an indirect pecuniary interest in the underlying security. See id. § 240.16a-1(a)(2)(ii)(F). But here is the crucial exception: a derivative with a floating exercise or conversion price is not a derivative security for § 16 purposes. See id. § 240.16a-1(c)(6); [1990-1991 Transfer Binder] Fed. Sec. L. Rep. ¶ 84,709, at 81,265. In other words, Morgan Capital, as a holder of floating-price convertible preferred stock, did not own derivative securities, did not have an indirect pecuniary interest in the underlying common stock, and accordingly (assuming Morgan Capital had no other form of pecuniary interest) was not a beneficial owner of the common stock until the conversion--for purposes *other* than determining ten percent beneficial ownership. It may seem odd that Morgan Capital both was and was not a beneficial owner of Editek common before the conversion, but the SEC has long recognized the two definitions of *beneficial owner* can result in different determinations of beneficial ownership. See Interpretive Release on Rules Applicable to Insider Reporting and Trading, Release No. 34-18,114, 4 Fed. Sec. L. Rep. (CCH) ¶ 26,062, at 19,063-7 n.17 (Sept. 23, 1981). In sum, the quoted passage has no bearing on whether Morgan Capital was a beneficial owner for the purpose of determining ten percent beneficial ownership before the conversion. That issue is governed by the "within sixty days" rule, not the "pecuniary interest" rule.

The district court held Editek's complaint failed to state a claim based solely on the conclusion that Morgan Capital was not a beneficial owner before the conversion. That conclusion was incorrect, so the district court's ruling cannot stand. On appeal, Morgan Capital has raised two other legal challenges to Editek's complaint. Morgan Capital claims a holder of convertible preferred stock cannot "float" into and out of ten percent ownership of the underlying common stock as the price of the common stock fluctuates. The district court mentioned this issue, but did not resolve it. See Editek, 974 F. Supp. at 1233. At oral argument, Morgan Capital argued its stock conversion was not a "purchase" matchable against a later sale, but merely a change in the form of its beneficial ownership. In remanding this case, we express no opinion on these or

any other issues, which we leave for the district court to address in the first instance as the parties choose to raise them.

We reverse the judgment of the district court, vacate the district court's order dismissing with prejudice Editek's complaint under Federal Rule of Civil Procedure 12(b)(6), and remand for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.