**Edward W. HILGEMAN, on behalf of himself and all other purchasers of "Security Charter Contracts" Issued and Sold by National Insurance Company of America, a North Dakota Corporation, Plaintiff-Appellant,**

v.

**NATIONAL INSURANCE COMPANY OF AMERICA, etc., et al., Defendants-Appellees.**

**No. 75–1724.**

United States Court of Appeals, Fifth Circuit.

Feb. 18, 1977.

---

2

J. Vernon Patrick, Jr., Barton S. Sacher, Birmingham, Ala., for plaintiff-appellant.

Alan W. Heldman, Birmingham, Ala., for defendants-appellees.

Before GODBOLD, McCREE * and TJOFLAT, Circuit Judges.

GODBOLD, Circuit Judge:

The facts of this case are set forth in our earlier decision, *Hilgeman v. National Insurance Company*, 444 F.2d 446 (CA5, 1971). In that appeal we were unable to determine the basis upon which the district court dismissed Hilgeman's complaint, and we remanded the case for clarification of the dismissal order.

* Of the Sixth Circuit, sitting by designation.

The only additional facts of relevance to the disposition of the case before us are that while plaintiff resided in Alabama NICOA sent to him what it termed a "premium" notice and he paid that "premium."

■ On remand the district court added to its earlier dismissal order by holding that the Security Charter Contracts were not "securities" within the meaning of the federal Securities Acts and thus the court lacked subject matter jurisdiction. The district court has not reconciled its dismissal for lack of subject matter jurisdiction with the teachings of *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), as required by our earlier decision, 444 F.2d at 446. As we noted in *Mobil Oil Corp. v. Kelley*, 493 F.2d 784, 786 (CA5), *cert. denied*, 419 U.S. 1022, 95 S.Ct. 498, 42 L.Ed.2d 296 (1974), *Bell v. Hood* establishes the principle that "a complaint that alleges the existence of a federal question establishes jurisdiction, even though the court ultimately decides that the plaintiff's federal rights were not violated." Dismissal for lack of jurisdiction is appropriate only where the court decides that the federal claim is insubstantial, i. e., frivolous, or where the claim is clearly foreclosed by prior decisions of the Supreme Court. *Mays v. Kirk*, 414 F.2d 131, 135 (CA5, 1969). Plaintiff's claim has not been foreclosed by any decision of the Supreme Court, nor is it so lacking in plausibility that it can be said to be frivolous.[1] Therefore, the complaint cannot be dismissed for lack of subject matter jurisdiction. Nonetheless, if the contracts are not "securities" plaintiff's claims could still be dismissed for failure to state a claim upon which relief can be granted. Therefore, we reverse the dismissal by the district court with directions that it reconsider its decision in light of our holding today in *Grainger v. State Security Insurance Co.* (CA5, 1977) No. 75–3061, 547 F.2d 303.

The district court went on to say that assuming that the Security Charter Contracts were securities, it would still dismiss the plaintiff's complaint on the following grounds: (a) lack of sufficient service of process on NICOA, Moody and Sando; (b) lack of personal jurisdiction over NICOA, Sando and Moody; (c) lack of proper venue as to the claims against NICOA, Moody and Sando; and (d) failure to state a claim upon which relief can be granted against Moody and Empire on the ground that those two defendants did not become controlling persons of NICOA until two years after the alleged misrepresentations were made to the plaintiff.[2] Plaintiff appeals from the court's clarifying order as well as from its denial of plaintiff's motion to be allowed to amend its complaint to allege violations of the 1940 Investment Company Act.

■ Service of process was made on NICOA and Empire by substituted service upon the Alabama Superintendent of Insurance pursuant to state law.[3] Service of process under the Alabama Unauthorized Insurers Process Act is limited to suits, actions or proceedings "arising out of" contracts of insurance. While the courts of Alabama have not interpreted the "arising out of" language in the statute, the Alabama legislature in its statement of the Act's purpose, declared that "it is a subject of concern that many residents of this state hold *policies of insurance* issued or delivered in this state by insurers while not authorized to do business in this state, thus presenting to such residents the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights *under*

---

1. As Professors Wright and Miller have said, "The test for dismissal is a rigorous one and if there is any foundation of plausibility to the claim federal jurisdiction exists." C. Wright and A. Miller, 13 Federal Practice and Procedure § 3504 at 428 (1975).

2. The district court also dismissed the claims against Moody and Empire on the ground that the court lacked "subject matter jurisdiction" because the two were not "controlling persons" at the relevant times. Our comments concerning the dismissal for lack of subject matter jurisdiction because the contracts were not "securities" have equal applicability here.

3. Ala.Code, Tit. 28A § 215 (Supp.1973), formerly Ala.Code, Tit. 28, § 413 (Recomp.1958).

*the policy."* [4] [Emphasis supplied.] The appellant does not assert that he holds an insurance policy and that the policy gives rise to enforceable rights. Instead, he maintains that he was sold a "security" within the meaning of the federal Securities Acts, and that he has a cause of action arising under those Acts.[5] The Alabama statute used by plaintiff was meant to cover the former situation, not the latter.[6] The court below was correct in dismissing the claims against Empire and NICOA for lack of proper service of process.

■ Service of process was made on Moody and Sando by U.S. marshals pursuant to the service of process provisions of the federal Securities Acts, 15 U.S.C. §§ 78v, 78aa. The court below held that service was insufficient because neither Moody nor Sando is "found or is an inhabitant or transacts business in Alabama nor is the suit based upon an offer or sale that took place in Alabama." Service of process under the 1933 and 1934 Acts is nationwide, and may be served "in any . . . district of which the defendant is an inhabitant or wherever the defendant may be found." *Id.* The language referred to by the district court is the language governing venue and *in personam* jurisdiction under

the 1933 Act. Therefore, the court's conclusion that there was no adequate service of process upon Moody and Sando is incorrect.

■ The court below also held that it lacked personal jurisdiction over NICOA as well as Sando and Moody, and that venue was improper with respect to these three defendants. In doing so, the district court erred. Both the personal jurisdiction and venue issues are governed by § 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa.[7] According to § 27 any suit to enforce liability under the 1934 Act may be brought in the district where "any act or transaction constituting the violation occurred." [8] The "act" contemplated by the statute need not be crucial, nor must "the fraudulent scheme be hatched in the forum district." *Hooper v. Mountain State Securities Corporation,* 282 F.2d 195, 204 (CA5, 1960). But, as we pointed out in *Hooper,* the jurisdictional act cannot be trivial; it must be "of material importance to the consummation of the scheme." *Id.* at 205.[9] According to the affidavits submitted by the plaintiff, NICOA sent an annual premium notice to the plaintiff at his home in the Northern District of Alabama, and the plaintiff paid the "premium" that was demanded by a check drawn on an Alabama

**4.** Ala.Code, Tit. 28A § 214 (Supp.1973).

**5.** We do not imply that a state's provision for personal jurisdiction over insurance companies can never be used where federal securities claims are asserted. We base our decisions solely on our interpretation of the Alabama statute.

**6.** *Cf. Ross v. American Income Life Ins. Co.,* 232 S.C. 433, 102 S.E.2d 743 (1958), where it was held that a similar statute containing "arising under" language did not cover suits for fraud in the inducement.

We have been given no explanation of why, given the liberal nationwide service of process provisions of the federal Securities Acts, particularly § 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, the plaintiff made use of the Alabama insurance statute to effect service of process when the whole thrust of his action was that he held a security rather than an insurance policy. Plaintiff obtained service of process on the two non-corporate defendants under the federal statute.

**7.** While the plaintiff in this case states claims under the 1933 Securities Act as well as the

1934 Act, the general rule is that where a plaintiff states claims under both the '33 and '34 Acts, the less restrictive jurisdiction and venue provisions contained in § 27 of the 1934 Act are to be applied, e. g., *Arpet Ltd. v. Homans,* 390 F.Supp. 908, 911 (W.D.Pa.1975); *Sohns v. Dahl,* 392 F.Supp. 1208, 1214 (W.D. Va.1974); *Burkhart v. Allson Realty Trust,* 363 F.Supp. 1286, 1292 (N.D.Ill.1973); *S.E.C. v. National Student Marketing Corp.,* 360 F.Supp. 284, 291 (D.D.C.1973).

**8.** 15 U.S.C. § 78aa.

**9.** Other courts have expressed this standard in slightly different terms, e. g., *Bath Industries, Inc. v. Blot,* 427 F.2d 97, 114 (CA7, 1970) ("All that is required is but one act within the forum district which represents more than an immaterial part of the allegedly illegal events.") We see no significant difference between such a formulation and the "material importance" language in *Hooper.*

bank. In spite of this mailing the district court concluded that "[n]o act or transaction constituting an important step in the transaction took place in [the Northern District of Alabama]." The court reached this conclusion not by examining the materiality of the "premium" notice, but by limiting the scope of plaintiff's complaint to the alleged misrepresentations made in the state of Washington.[10]

■ The coverage of 10b–5 is not confined to misrepresentations and non-disclosures. 1 A. Bromberg, Securities Law: Fraud, § 4.3 (1975). Rule 10b–5 also prohibits any person from employing a "device, scheme or artifice to defraud" or from engaging in "any act, practice or course of business which operates or would operate as a fraud or deceit upon any person." 17 C.F.R. § 240.10b–5 (1976). Reduced to its essentials, the injury of which the appellant complains is not simply that he was fraudulently induced to purchase a security by making one lump sum payment, as is the usual case. Instead he complains that he is the victim of an ongoing scheme whose ultimate aim was to extract a "premium" from him each year on a continuing basis. In other words, each payment to the defendants represented, in the words of *Hooper*, a yearly "consummation of the scheme." Viewing the allegations in this manner, there can be little doubt that the sending of

the premium payment notice into Alabama was a step of material importance to that year's consummation of the ongoing scheme, i. e., extracting an annual payment from the plaintiff.[11] Thus, jurisdiction and venue are proper as to NICOA and under the "co-conspirator theory" proper as to its co-defendants.[12]

■ Finally, the court below dismissed the claims against Moody and Empire on the ground that they did not become controlling persons of NICOA until two years after the alleged misrepresentations took place. As we have already discussed, the Security Charter Contracts, if indeed they were securities, were not the usual type of security which is bought with a single payment. The arrangement allegedly made between the plaintiff and NICOA called for yearly payments. The plaintiff does maintain that Moody and Empire were controlling persons while these payments were being made, i. e., while NICOA was actively engaged in parting plaintiff from his money. Whether a defendant is a controlling person within the meaning of § 20 of the 1934 Act is a complex question of fact, *Hill York Corp. v. American International Franchises, Inc.*, 448 F.2d 680, 694 n. 20 (CA5, 1971); *Klapmeier v. Telecheck International, Inc.*, 315 F.Supp. 1360, 1361 (D.Minn. 1970), and the facts of this case as developed may show that Moody and Empire

---

10. "It is clear from the complaint that the 'offer and sale' took place in the State of Washington. . . . The alleged securities law violation was misrepresentations allegedly made in Washington at the time of sale of the policy."
*Hilgeman v. National Ins. Co. of North America*, No. 69–602 (N.D.Ala., July 16, 1974).

11. To establish jurisdiction and venue under § 27 the defendant need not be physically present in the forum district nor need he commit more than a single act in the district if that act is important to the consummation of the scheme. *E. g., Hooper v. Mountain States Securities, supra; Sarratt v. Walker*, 405 F.Supp. 132 (D.S.C.1975); *Mayer v. Development Corp. of America*, 396 F.Supp. 917 (D.Del.1975); *Oxford First Corp. v. PNC Liquidating Corp.*, 372 F.Supp. 191 (E.D.Pa.1974).

12. The "co-conspirator theory" was described by one court in the following terms:

"Plainly stated, this doctrine provides that in a multi-defendant securities proceeding, where a common scheme of acts or transactions to violate the securities act is alleged, if venue is established for any of the defendants in the forum district there is sufficient justification to establish venue as to the other defendants, even in the absence of any contact or substantial contact by any one defendant within that district." (Footnote omitted.)
*S.E.C. v. National Student Marketing Corp.*, 360 F.Supp. 284, 291–92 (D.D.C.1973). This theory has been adopted by many federal courts, including this circuit, *e. g., Sargent v. Genesco, Inc.*, 492 F.2d 750, 759 (CA5, 1974); *Klepper Krop, Inc. v. Hanford*, 411 F.Supp. 276 (D.Neb.1976); *Zorn v. Anderson*, 263 F.Supp. 745 (S.D.N.Y.1966).

were not controlling persons. Nevertheless, these two defendants cannot be eliminated as controlling parties merely by artificially limiting the scope of plaintiff's complaint to the alleged fraudulent misrepresentations.

Plaintiff also challenges the validity of the district court's refusal to allow him to amend his complaint to allege violations of the 1940 Investment Company Act. The district court set forth no reasons for its ruling. We will not speculate as to the district court's reasoning. If upon remand of this case the district court wishes to adhere to its earlier position, it should set forth its reasons for doing so, bearing in mind the mandate of F.R.Civ.P. 15(a) that leave to amend "shall be freely given when justice so requires."

AFFIRMED in part, REVERSED and REMANDED in part.