**CATHOLIC ORDER OF FORESTERS; Federated Life Insurance Co.; Homesteaders Life Co.; Mennonite Mutual Aid Assoc.; and United Life Insurance Co., Plaintiffs,**

v.

**U.S. BANCORP PIPER JAFFRAY, INC.; Timothy Oswald; Michael Cebuhar; Best & Flanagan, L.L.P.; Morris Knopf; Brick, Gentry, Bowers, Swartz, Stoltze, Schuling & Levis, P.C.; Amy Beattie; Lyle Fairs; Richard Woodside; Larry Crosser; and Mark Shields, Defendants.**

No. C 03–0081–MWB.

United States District Court, N.D. Iowa, Cedar Rapids Division.

Sept. 27, 2004.

---

Kimberly Holst Blankenship, Timothy J. Hill, William T. McCartan, Bradley & Riley, Cedar Rapids, IA, for Plaintiffs.

Leonard T. Strand, Simmons Perrine Albright Ellwood, Cedar Rapids, IA, Nathan P. Brenna, Steven M. Phillips, Anthony Ostlund & Baer, P.A., Lewis A. Remele, Jr., Mark R. Whitmore, Robin Ann Williams, Bassford Remele, PA, Minneapolis, MN, Glenn L. Smith, Finley Alt Smith Scharnberg Craig Hilmes & Gaffney, PC, Des Moines, IA, Tamara K. Hackmann, Meyer Capel, Champaign, IL, Thomas A. Finley, Finley Alt Smith Scharnberg Craig Hilmes & Gaffney, PC, Des Moines, IA, Thomas J. Joesen, Finley, Alt, Smith, Scharnberg, Craig, Hilmes & Gaffney, PC, Lawrence P. McLellan, Sullivan & Ward, PC, Des Moines, IA, for Defendants.

## MEMORANDUM OPINION AND ORDER REGARDING THE MOTION TO DISMISS BY THE "CRESTLAND DEFENDANTS"

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION ....................................................1151

II. LEGAL ANALYSIS ..................................................1153
 A. Improper Venue ..............................................1153
 1. Arguments of the parties ................................1153
 2. Applicable standards ....................................1154
 a. Rule 12(b)(3) .......................................1154
 b. Venue statutes ......................................1154
 i. The "general" venue statute .....................1154
 ii. The "special" venue statute for federal securities claims....1155
 3. Analysis ................................................1157
 B. Failure To State A Claim ....................................1158
 1. Arguments of the parties ................................1158
 2. Applicable standards ....................................1159
 3. Analysis ................................................1160
 a. The automatic stay in bankruptcy ....................1160
 b. Scope of Crestland Cooperative's automatic stay ......1162
 c. "Assets of the bankruptcy estate" bar ...............1163

III. CONCLUSION ......................................................1164

## I. INTRODUCTION

In this action, the plaintiffs assert numerous claims against various defendants arising from the plaintiffs' purchases in 1998 and 1999 of over $10.5 million in bonds of Crestland Cooperative, a cooperative now under bankruptcy protection.[1]

---

1. Crestland Cooperative is currently under the jurisdiction of the United States Bankruptcy Court for the Southern District of Iowa on an amended petition pursuant to Chapter 7 of the Bankruptcy Code. Crestland Cooperative's petition was initially filed under Chapter 11, but was later converted into a Chapter 7 petition.

Because their claims arise from their purchase of bonds, the plaintiffs will be referred to hereinafter as "the Bondholders." The defendants allegedly were the sellers of the Crestland bonds, underwriters of those bonds, or entities otherwise involved in the preparation or dissemination of information about the bonds or Crestland Cooperative that was intended for potential purchasers of the bonds. The Bondholders' original Complaint, filed on June 30, 2003, asserted twenty-six claims against six entities or individuals, while their First Amended Complaint, filed on July 30, 2003, asserts forty claims against ten entities or individuals. The additional defendants in the First Amended Complaint are the so-called "Crestland Defendants," as the Bondholders identify Lyle Faris, who was allegedly the president of Crestland, Richard Woodside, who was allegedly the secretary, Larry Crosser, who was allegedly the chief executive officer, and Mark Shields, who was allegedly the executive vice president. The fourteen additional claims in the First Amended Complaint are all against the Crestland Defendants.[2]

Many of the defendants answered the First Amended Complaint. However, on November 13, 2003, the Crestland Defen-dants instead filed a Motion To Dismiss (docket no. 28). In their motion, the Crestland Defendants seek dismissal of all fourteen claims against them pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure for improper venue. In addition, Larry Crosser seeks dismissal of the claims against him pursuant to Rule 12(b)(6) for failure to state claims upon which relief can be granted. The Bondholders resisted the Crestland Defendants' motion on December 5, 2003 (docket no. 38).

A magistrate judge of this court held in abeyance the scheduling order for this case pending resolution of the Crestland Defendants' motion to dismiss. On April 9, 2004, the magistrate judge also ruled that the federal securities violations alleged in the First Amended Complaint invoke a mandatory stay of discovery under the Private Securities Litigation Reform Act, which stays all discovery, including initial disclosures, on all claims, until after the court has ruled on any pending motions to dismiss. *See* Order of April 9, 2004 (docket no. 51) (citing 15 U.S.C. § 78u–4(b)(3)(B)). Therefore, the parties have not commenced discovery in this ac-

---

2. The claims against the Crestland Defendants are the following: violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder relating to the security for the bonds in **Count 27**; "control person" liability pursuant to Sections 12 and 15 of the Securities Act of 1933 relating to the security for the bonds in **Count 28**; violations of the Iowa Uniform Securities Act, Iowa Code §§ 502.401 & 502.502(1), relating to the security for the bonds in **Count 29**; aiding and abetting violations of the Iowa Securities Act relating to the security for the bonds in **Count 30**; "common-law fraud" in **Count 31**; negligent misrepresentation relating to the security for the bonds in **Count 32**; "negligence" relating to the security for the bonds in **Count 33**; violations of Section 10(b) of the Securities Ex-change Act of 1934 and Rule 10b–5 promulgated thereunder relating to the replacement value report for the 1999 bonds in **Count 34**; "control person" liability pursuant to Sections 12 and 15 of the Securities Act of 1933 relating to the replacement value report for the 1999 bonds in **Count 35**; violations of the Iowa Uniform Securities Act, Iowa Code §§ 502.401 & 502.502(1), relating to the replacement value report for the 1999 bonds in **Count 36**; aiding and abetting violations of the Iowa Securities Act relating to the replacement value report for the 1999 bonds in **Count 37**; negligent misrepresentation relating to the replacement value report for the 1999 bonds in **Count 38**; negligence relating to the replacement value report for the 1999 bonds in **Count 39**; and tortious interference with a contract in **Count 40**.

tion, even though the action has been pending for more than a year.

This case, including the Crestland Defendants' motion to dismiss, was originally assigned to United States District Court Judge Linda R. Reade. However, on July 20, 2004, Judge Reade recused herself, and this case was reassigned to the undersigned. The undersigned finds that the Crestland Defendants' motion to dismiss is now long overdue for disposition. The court acknowledges that the Crestland Defendants requested that they be heard orally on their motion. However, the belated reassignment of this case to the undersigned, the pressing need to get this case moving, and the undersigned's present involvement with a federal death penalty trial—already in its seventh week and likely to continue for as much as another two months-have not permitted the hearing of oral arguments. In addition, the court finds that oral arguments are not necessary in light of the issues presented in the Crestland Defendants' motion to dismiss. Therefore, the Crestland Defendants' motion to dismiss will be resolved on the basis of the parties' written submissions without a hearing or oral arguments.

## II. LEGAL ANALYSIS

### A. Improper Venue

#### 1. Arguments of the parties

■ The Crestland Defendants first assert that all claims against them should be dismissed pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure for improper venue. They argue that, in the First Amended Complaint, the Bondholders alleged venue pursuant to 28 U.S.C. § 1391(b)(2) and (3), but that neither of the cited provisions of § 1391 would properly lay venue in the Northern District of Iowa. More specifically, they argue that the actions giving rise to the Bondholders' claims did not substantially arise or occur in this district, because the claims alleged-

ly arose out of actions of the Crestland Defendants as corporate officers of a cooperative that is not located in the Northern District of Iowa. They also argue that there is no sufficient allegation that the bonds in question were delivered, documents related to the bonds were reviewed, or reliance placed on those documents in this district, because only one of the Bondholders has its corporate offices in this district. They argue, further, that the property involved in this action is not located in this district, because the real property owned by the Crestland Cooperative was located in Guthrie, Union, and Page Counties, all of which lie in the Southern District of Iowa. Finally, the Crestland Defendants argue that there is no allegation that there is no other district where this action could be brought, when three of the Crestland Defendants cannot be found in this district, all but one reside in the Southern District of Iowa, and any misdeeds allegedly occurred in the Southern District of Iowa.

On the other hand, the Bondholders argue that venue *is* proper in this district, owing to the special venue provisions for claims based on Section 10(b) of the Securities Exchange Act of 1934. They contend that, under Section 27 of the Act, 15 U.S.C. § 78aa, venue on a securities claim is proper wherever a plaintiff was a victim of a defendant's acts or omissions. Under this venue provision, the Bondholders contend, there is no requirement that the defendant be physically present or commit more than a single act in this district for venue to be proper here. Rather, they argue that telephone calls and mailings in connection with the securities law violations are adequate acts within the forum for venue to be proper here. The Bondholders contend, next, that the venue thereby established extends to *all* defendants involved in a common fraudulent scheme. They contend that they have ade-

quately alleged that plaintiff United Life's chief investment advisor, Kevin Kubik, received all pertinent communications relating to United Life's purchase of Crestland bonds, by telephone and mailing, at United Life's place of business in Cedar Rapids, Iowa, which is in this district, and that all of the defendants were involved in the same scheme. Finally, they argue that all of their claims are premised on the same injury to all of the Bondholders arising from the same information, so that venue for all of the Bondholders' claims against all of the defendants, including the Crestland Defendants, is proper in this district.

### 2. Applicable standards

#### a. Rule 12(b)(3)

 Rule 12(b)(3) provides that a challenge to venue may be made by pre-answer motion. *See* Fed. R. Civ. P. 12(b)(3) ("[T]he following defenses may at the option of the pleader be made by motion: ... (3) improper venue.... A motion making any of these defenses shall be made before pleading if a further pleading is permitted."). A hearing on such a motion may be appropriate where facts on which the motion or allegations of venue are based are genuinely in dispute. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir.2004). However, whether or not to hold such a hearing and the scope and method of such a hearing are within the discretion of the district court. *Id.* Therefore, the court may deny a Rule 12(b)(3) motion without a hearing, but does so without prejudice to later reassertion should later development of the record eliminate genuine issues of fact. *Id.* Thus, "[t]o survive a motion to dismiss for improper venue when no evidentiary hearing is held, the plaintiff need only make a prima facie showing of venue." *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir.2004). A district court's ruling on venue is reviewed *de novo*. *Id.* A dismissal

for improper venue, on the other hand, is reviewed for abuse of discretion, because 28 U.S.C. § 1406 generally permits the court to cure venue defects by transferring a case to an appropriate venue instead of dismissing it. *Continental Ins. Co. v. M/V ORSULA*, 354 F.3d 603, 608 (7th Cir.2003); *Kerobo v. Southwestern Clean Fuels Corp.*, 285 F.3d 531, 533 (6th Cir.2002).

As the Sixth Circuit Court of Appeals recently explained,

[A] Rule 12(b)(3) motion to dismiss for improper venue is simply the procedural vehicle by which to challenge improper venue; the Rules of Civil Procedure do not contain any venue provisions or requirements. The requirements for venue are set by statute, as are the remedies available for improper and inconvenient venue.

*Kerobo*, 285 F.3d at 538 (citing 28 U.S.C. § 1406 as the statute providing remedies for improper venue and 28 U.S.C. § 1404 as the statute providing remedies for inconvenient venue). Therefore, the court turns to consideration of the statutes upon which venue is based in this case.

#### b. Venue statutes

"One of the central purposes of statutory venue is to ensure that a defendant is not haled into a remote district, having no real relationship to the dispute." *Richards v. Aramark Servs., Inc.*, 108 F.3d 925, 928 (8th Cir.1997) (internal quotation marks and citations omitted) (also explaining that "[v]enue requirements exist for the benefit of defendants."). Nevertheless, as the discussion below demonstrates, Congress has defined venue for certain kinds of claims quite broadly, where policy interests are thereby served.

██ **i. The "general" venue statute.** Where no special venue statute is applicable, the general venue statute, 28 U.S.C. § 1391, applies. *Woodke v. Dahm*, 70 F.3d

at 983, 985 (8th Cir.1995) (the Lanham Act contains no "special venue provision," so the plaintiff's Lanham Act claim was subject to "the general venue statute," § 1391); *Bredberg v. Long,* 778 F.2d 1285, 1287 (8th Cir.1985) (the FLSA contains no "special venue provision," so "the general venue provisions of 28 U.S.C. § 1391 govern" such claims). Indeed, in this case, the Bondholders pleaded that "[v]enue is proper pursuant to 28 U.S.C. § 1391(b)(2) and (3)." First Amended Complaint, ¶ 19. The cited venue provisions of the general venue statute provide as follows:

> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in ... (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b)(2) & (3). Venue premised on subdivision (2) is relatively narrow, while venue premised on subdivision (3) is relatively broad, presumably owing to a desire to provide some forum for relief of claims, when no forum would otherwise be available.

*ii. The "special" venue statute for federal securities claims.* Although the Bondholders originally relied on provisions of the "general" venue statute in their First Amended Complaint, in response to the Crestland Defendants' motion to dismiss, they now rely instead on a "special" venue statute. Indeed, they make no argument that venue is proper pursuant to § 1391.

The "special" venue statute upon which the Bondholders rely is § 27 of the Securities Exchange Act, 15 U.S.C. § 78aa.

They contend that this "special" venue statute is applicable here, because this case involves federal securities claims. The court agrees that § 78aa is the special venue provision for claims under the Securities Exchange Act. *See Travis v. Anthes Imperial, Ltd.,* 473 F.2d 515, 520 (8th Cir. 1973) (identifying 15 U.S.C. § 78aa as the "special venue provision[ ] of the Securities Exchange Act"). Thus, the court must probe further to determine whether this "special" venue statute permits the Bondholders to bring this suit in this district, even if provisions of the "general" venue statute would not.

Section 78aa provides, in pertinent part, as follows:

> Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district [that is, any district wherein any act or transaction constituting the violation occurred] or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

15 U.S.C. § 78aa. Thus, "[u]nder [§ 78aa], venue ... is proper only in the district where (1) the defendant is found or is an inhabitant or transacts business, or (2) *any act or transaction constituting the violation occurred." Medtox Scientific, Inc. v. Morgan Capital, L.L.C.,* 258 F.3d 763, 769 (8th Cir.2001) (emphasis added) (§ 16(b) action). It is the latter alternative on which the Bondholders premise proper venue in this district.

■ More than twenty years ago, the Eighth Circuit Court of Appeals read this alternative to permit venue in a district in which "the consequences of the [defendant's] action were felt." *Travis*, 473 F.2d at 529 (concluding that consequences in the Eastern District of Missouri of actions by the defendant in Canada were sufficient to establish venue in the Eastern District of Missouri). More recently, the Second Circuit Court of Appeals has recognized that venue under this alternative was proper in a district "into and out of" which the defendant "caused communications to be transmitted" in furtherance of a fraudulent scheme in violation of the Securities Exchange Act. *United States v. Kim*, 246 F.3d 186, 192 (2d Cir.2001); *see also United States v. Svoboda*, 347 F.3d 471, 483 (2d Cir.2003) (citing *Kim*). Thus, venue is proper where the consequences of the defendant's actions are felt or where the defendant knowingly sent information in furtherance of a securities fraud. *Travis*, 473 F.2d at 529; *Kim*, 246 F.3d at 192; *see also Busch v. Buchman, Buchman & O'Brien Law Firm*, 11 F.3d 1255, 1257 (5th Cir.1994) (the Southern District of Texas had "subject matter jurisdiction," *i.e.*, "venue," over a New York law firm that drafted a tax opinion and prospectus for securities for a New York promoter in New York, because the law firm knew that the promoter intended to market the securities nationwide). Indeed, the Ninth Circuit Court of Appeals explained some time ago that " '[t]he "act" contemplated by the statute need not be crucial, nor must "the fraudulent scheme be hatched in the forum district." ' " *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir.1985) (quoting *Hilgeman v. National Insurance Co. of America*, 547 F.2d 298, 301 (5th Cir.1977), in turn quoting *Hooper v. Mountain States Securities Corp.*, 282 F.2d 195, 204 (5th Cir.1960)). The possible fora under this "special" venue provision are defined broadly, because

" '[w]ithout question, the intent of the venue and jurisdiction provisions of the securities laws is to grant potential plaintiffs liberal choice in their selection of a forum.' " *Id.* (quoting *Ritter v. Zuspan*, 451 F.Supp. 926, 928 (E.D.Mich.1978)).

■ The proper venue for securities claims under § 78aa is also the proper venue for pendant claims involving the same nucleus of operative facts. *Travis*, 473 F.2d at 529; *accord SST Global Tech., LLC v. Chapman*, 270 F.Supp.2d 444, 452 (S.D.N.Y.2003) ("Where there are state claims asserted in addition to securities law claims governed by the venue provisions of § 78aa, a finding that venue is appropriate with regard to the securities law claims is sufficient to establish venue with regard to all claims."). Moreover, "a co-conspirator venue theory" applies under § 78aa, because such a concept of venue serves the "important interest of joining all defendants in one action, thereby avoiding duplicitous litigation and inconsistent results." *Vigman*, 764 F.2d at 1317.

Under the co-conspirator venue theory, where an action is brought against multiple defendants alleging a common scheme of acts or transactions in violation of securities statutes, so long as venue is established for any of the defendants in the forum district, venue is proper as to all defendants. *This is true even in the absence of any contact by some of the defendants in the forum district.*

*Vigman*, 764 F.2d at 1317 (emphasis added). This venue theory has been expressly adopted by the Second, Fifth, and Ninth Circuit Courts of Appeals. *Id.* at 1318 (adopting the theory in accord with the holdings in *Wyndham Assocs. v. Bintliff*, 398 F.2d 614 (2d Cir.), *cert. denied*, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968), and *Hilgeman v. National Ins. Co. of Am.*, 547 F.2d 298 (5th Cir.1977)). This

court agrees with these Circuit Courts of Appeals that "[t]he strong policy favoring litigation of related claims in the same forum supports the application of a co-conspirator venue theory in actions based upon violations of federal securities statutes." *Id.* Thus, venue that is proper for the securities claims as to one defendant is also proper as to all claims with a common nucleus of operative facts and all defendants involved in the securities scheme.

■ There is one further consequence of applicability of a "special venue" provision, such as § 78aa. "The Supreme Court has held that Congress may, by a special venue statute, deprive courts of their discretionary power to transfer cases arising under that statute." *United States v. McManus*, 535 F.2d 460, 463 (8th Cir. 1976) (citing *United States v. National City Lines*, 334 U.S. 573, 68 S.Ct. 1169, 92 L.Ed. 1584 (1948), in which "the Court held that the legislative history of § 12 of the Clayton Act showed such a Congressional intent, and that a plaintiff's choice among several proper venues cannot be overridden."). Thus, where a special venue provision is applicable, this court does not have the discretion to transfer the case from the plaintiff's chosen venue pursuant to 28 U.S.C. § 1404. *Id.*

### 3. *Analysis*

■ The court finds that the Crestland Defendants' challenge to venue is not based on a factual dispute; rather, it is based on a contention that, as a matter of law, the provisions of the general venue statute cited by the Bondholders do not apply. Thus, the court concludes that no hearing on the Crestland Defendants' Rule 12(b)(3) challenge to venue is required. *See Murphy*, 362 F.3d at 1139 (a hearing on a venue challenge may be appropriate when the challenge involves disputed facts, but whether or not to hold such a hearing is within the discretion of the court). In this case, the court concludes that the

Bondholders have made at least a "prima facie showing of venue," and their action, therefore, "survive[s] [the Crestland Defendants'] motion to dismiss for improper venue." *Mitrano*, 377 F.3d at 405 (only such a prima facie showing is required in the absence of an evidentiary hearing).

Specifically, the court concludes that, on the present record, venue is proper in this district pursuant to § 78aa, the special venue provision for federal securities claims. *See Travis*, 473 F.2d at 520 (identifying § 78aa as a "special venue" provision for claims under the Securities Exchange Act). Even assuming that no defendant is found in, an inhabitant of, or transacts any business in this district, venue here is proper, because this is a district in which at least one "act or transaction constituting the violation occurred," as evidenced by the allegations of the First Amended Complaint. *See Medtox Scientific, Inc.*, 258 F.3d at 769 (identifying these alternatives for venue under § 78aa). First, "the consequences of the [defendant's] action were felt" in this district, *Travis*, 473 F.2d at 529, where the Bondholders allegedly suffered losses in this district. Furthermore, venue is proper here, because plaintiff United Life received all pertinent communications relating to United Life's purchase of Crestland bonds by telephone and mailing at United Life's place of business in Cedar Rapids, Iowa, which is in this district. Such communications "into and out of" this district in furtherance of the allegedly fraudulent scheme in violation of the Securities Exchange Act are sufficient for venue to be proper here. *Kim*, 246 F.3d at 192; *Busch*, 11 F.3d at 1257. Such a conclusion is in accord with "'the intent of the venue and jurisdiction provisions of the securities laws ... to grant potential plaintiffs liberal choice in their selection of forum.'" *Vigman*, 764 F.2d at 1317 (quoting *Ritter*, 451 F.Supp. at 928).

Moreover, as noted above, the proper venue for securities claims under § 78aa is also the proper venue for pendant claims involving the same nucleus of operative facts. *Travis*, 473 F.2d at 529. Here, all of the claims in the First Amended Complaint arise from the same nucleus of operative facts, the sale of the 1998 and 1999 Bonds by Crestland. Because this district is the proper venue for securities claims against *some* of the defendants allegedly involved in the fraudulent scheme, it is likewise the proper venue for securities claims against *all* of the defendants allegedly involved in that scheme under "a co-conspirator venue theory," even if some of the defendants had no contact with the forum district. *Vigman*, 764 F.2d at 1317. These results are also in accord with "[t]he strong policy favoring litigation of related claims in the same forum." *Id.*

■ The fly in the ointment appears to be that the Bondholders have not *pleaded* that venue is proper pursuant to § 78aa; rather, the allegation in their First Amended Complaint is that venue is proper pursuant to provisions of the general venue statutes, specifically, § 1391(b)(2) and (3). *See* First Amended Complaint, ¶ 19 (alleging that "[v]enue is proper pursuant to 28 U.S.C. § 1391(b)(2) and (3)"). The failure to plead venue based on § 78aa is not fatal, however, because "in contrast to pleading requirements for jurisdiction, plaintiff is not required to include in his complaint allegations showing that venue is proper in the district in which the suit has been brought." *Simon v. Ward*, 80 F.Supp.2d 464, 468 n. 9 (E.D.Pa.2000) (citing Fed. R. Civ. P., Advisory Committee Notes to Form 2, at ¶ 3, which states, "Since improper venue is a matter of defense, it is not necessary for plaintiff to include allegations showing the venue to be proper," and also citing 15 Wright & Miller, Federal Practice and Procedure, § 3826 (1987)). "Thus, the fact that plaintiff did not include in his complaint allega-

tions of all possible bases for venue does not make venue improper in this district." *Id.*

The court concludes that venue is proper in this district as to all claims and all defendants. Therefore, the portion of the Crestland Defendants' motion to dismiss asserting improper venue will be denied.

### B. Failure To State A Claim

### 1. Arguments of the parties

■ Crestland Defendant Larry Crosser also argues that the Bondholders' First Amended Complaint fails to state claims against him upon which relief can be granted, so that claims against him should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The gravamen of Crosser's argument is that the assets sought from him by the Bondholders are the same assets sought from him by the bankruptcy trustee for the Crestland Cooperative bankruptcy estate on the basis of alleged preferential transfers. Thus, Crosser contends that the assets in question belong to the Crestland Cooperative bankruptcy estate and that the Bondholders' claims against him are thereby barred by the automatic stay in bankruptcy under 11 U.S.C. § 362.

In response, the Bondholders argue that the automatic stay in bankruptcy, which admittedly would bar actions against Crestland Cooperative, does not extend to a non-debtor, such as Crosser. Moreover, the Bondholders dispute that they are after the "same assets" that the Crestland Cooperative bankruptcy trustee seeks in ongoing proceedings in bankruptcy court. They point out that Crosser has or may have other assets from which a judgment against him in this case could be satisfied, if he is found to have engaged in wrongdoing that is unrelated to the preferential transfer issues, even if the bankruptcy court also finds that the transfers at issue in the bankruptcy proceedings were pref-

erential. Even if the Bondholders are after the "same assets" as the bankruptcy trustee, the Bondholders argue that those "assets" do not become part of the bankruptcy estate pursuant to 11 U.S.C. § 541 until the trustee *prevails* in the proceedings in bankruptcy court.

### 2. Applicable standards

The issue on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence in support of his, her, or its claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *United States v. Aceto Agric. Chem. Corp.,* 872 F.2d 1373, 1376 (8th Cir.1989). In considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged by the complaining party, here the Bondholders, are true, and must liberally construe those allegations. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Gross v. Weber,* 186 F.3d 1089, 1090 (8th Cir.1999) ("On a motion to dismiss, we review the district court's decision de novo, accepting all the factual allegations of the complaint as true and construing them in the light most favorable to [the non-movant]."); *St. Croix Waterway Ass'n v. Meyer,* 178 F.3d 515, 519 (8th Cir.1999) ("We take the well-pleaded allegations in the complaint as true and view the complaint, and all reasonable inferences arising therefrom, in the light most favorable to the plaintiff."); *Gordon v. Hansen,* 168 F.3d 1109, 1113 (8th Cir.1999) (same); *Midwestern Machinery, Inc. v. Northwest Airlines,* 167 F.3d 439, 441 (8th Cir.1999) (same); *Wisdom v. First Midwest Bank,* 167 F.3d 402, 405 (8th Cir.1999) (same); *Duffy v. Landberg,* 133 F.3d 1120, 1122 (8th Cir.) (same), *cert. denied,* 525 U.S. 821, 119 S.Ct. 62, 142 L.Ed.2d 49 (1998); *Doe v. Norwest Bank Minn., N.A.,* 107 F.3d 1297, 1303–04 (8th

Cir.1997) (same); *WMX Techs., Inc. v. Gasconade County, Mo.,* 105 F.3d 1195, 1198 (8th Cir.1997) (same); *First Commercial Trust v. Colt's Mfg. Co.,* 77 F.3d 1081, 1083 (8th Cir.1996) (same).

█ On a motion to dismiss pursuant to Rule 12(b)(6), the court ordinarily cannot consider matters outside of the pleadings, unless the court converts the Rule 12(b)(6) motion into a motion for summary judgment pursuant to Rule 56. *See* FED. R. CIV. P. 12(b)(6); *see also Buck v. F.D.I.C.,* 75 F.3d 1285, 1288 n. 3 (8th Cir. 1996). However, on a motion to dismiss, the court may consider certain matters outside of the pleadings without converting the motion into a motion for summary judgment. For example, the court may consider documents outside of the pleadings where "the plaintiffs' claims are based solely on the interpretation of the documents [submitted] and the parties do not dispute the actual contents of the documents." *Jenisio v. Ozark Airlines, Inc., Retirement Plan,* 187 F.3d 970, 972 n. 3 (8th Cir.1999) (citing *Silver v. H & R Block, Inc.,* 105 F.3d 394, 397 (8th Cir. 1997)). The court may also take judicial notice of public records, such as the docket and pleadings of pending judicial proceedings, pursuant to Rule 201 of the Federal Rules of Evidence. *See also Cinel v. Connick,* 15 F.3d 1338, 1343 n. 6 (5th Cir.1994) (holding that, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record"); *United States v. Wood,* 925 F.2d 1580, 1582 (7th Cir.1991) (similar); *cf. Florida State Bd. of Admin. v. Green Tree Fin. Corp.,* 270 F.3d 645, 663 (8th Cir.2001) (taking judicial notice of SEC filings in deciding a Rule 12(b)(6) motion to dismiss); *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271 (11th Cir.1999) (same); *United States v. Doyle,* 121 F.3d 1078, 1088 (7th Cir.1997) (taking judicial notice of district court's docket

sheet). Thus, this court may properly consider the docket sheets and pleadings in the Crestland Cooperative bankruptcy, to the extent that they may be relevant here to Crosser's motion to dismiss pursuant to Rule 12(b)(6).

The court is mindful that, in treating the factual allegations of a complaint as true pursuant to Rule 12(b)(6), the court must "reject conclusory allegations of law and unwarranted inferences." *Silver,* 105 F.3d at 397 (citing *In re Syntex Corp. Securities Lit.,* 95 F.3d 922, 926 (9th Cir.1996)); *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990)(the court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts," citing *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987), and 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 595–97 (1969)); *see also LRL Properties v. Portage Metro Hous. Auth.,* 55 F.3d 1097, 1103 (6th Cir.1995) (the court "need not accept as true legal conclusions or unwarranted factual inferences," quoting *Morgan,* 829 F.2d at 12). Conclusory allegations need not and will not be taken as true; rather, the court will consider whether the *facts* alleged in the plaintiffs' complaint, accepted as true, are sufficient to state a claim upon which relief can be granted. *Silver,* 105 F.3d at 397; *Westcott,* 901 F.2d at 1488.

The United States Supreme Court and the Eighth Circuit Court of Appeals have both observed that "a court should grant the motion and dismiss the action 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Handeen v. Lemaire,* 112 F.3d 1339, 1347 (8th Cir.1997) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *accord Conley,* 355 U.S. at 45–46, 78 S.Ct. 99 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief."); *Meyer,* 178 F.3d at 519 ("The question before the district court, and this court on appeal, is whether the plaintiff can prove any set of facts which would entitle the plaintiff to relief" and "[t]he complaint should be dismissed 'only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations,' " quoting *Frey v. City of Herculaneum,* 44 F.3d 667, 671 (8th Cir. 1995)); *Gordon,* 168 F.3d at 1113 ("We will not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would demonstrate an entitlement to relief."); *Midwestern Machinery, Inc.,* 167 F.3d at 441 (same); *Springdale Educ. Ass'n v. Springdale Sch. Dist.,* 133 F.3d 649, 651 (8th Cir.1998) (same); *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 546 (8th Cir.1997) (same); *Doe,* 107 F.3d at 1304 (same); *WMX Techs., Inc.,* 105 F.3d at 1198 (same). Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Thus, "[a] motion to dismiss should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey,* 44 F.3d at 671 (internal quotation marks and ellipses omitted); *accord Parnes,* 122 F.3d at 546 (also considering whether there is an "insuperable bar to relief" on the claim).

### 3. Analysis

#### a. The automatic stay in bankruptcy

Crosser contends that the automatic stay in bankruptcy is an "insuperable bar"

to relief on the Bondholders' claims against him. *See id.* (a motion to dismiss is only proper where there is some "insuperable bar to relief"). Therefore, the court must explore the purpose and scope of the automatic stay.

Section 362 of Title 11 of the United States Code provides for an automatic stay on proceedings against a debtor as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

11 U.S.C. § 362(a); *see also Id.* at § 362(b) (exceptions).

■■■■ The Eighth Circuit Court of Appeals explained that, in a Chapter 11 proceeding, " '[t]he automatic stay is fundamental to the reorganization process, and its scope is intended to be broad.' " *In re Knaus*, 889 F.2d 773, 774 (8th Cir.1989) (quoting *SBA v. Rinehart*, 887 F.2d 165, 168 (8th Cir.1989), which in turn cites H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), reprinted in 1978 U.S.Code Cong. & Admin. News 5963, 6296–97). "[I]n chapter 11 proceedings a primary purpose of the automatic stay is to afford debtors an opportunity to continue their business with their available assets." *Id.* However, where, as here, a Chapter 11 proceeding has been converted into a Chapter 7 proceeding, courts "have no reorganization process to protect." *In re Titan Energy, Inc.*, 837 F.2d 325, 333–34 (8th Cir.1988). Nevertheless, a Chapter 7 filing "engages the automatic stay protection pursuant to 11 U.S.C. § 362(a)." *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1212 (9th Cir.2002); *accord Middle Tennessee News Co., Inc. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1082 (7th Cir.2001). In the case of both Chapter 7 and Chapter 11 petitions, "[t]he purposes of the bankruptcy stay under 11 U.S.C. § 362 'are to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by

forestalling a race to the courthouse.'" *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir.2003) (quoting *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir.1985)). "The automatic stay remains in effect until the bankruptcy court disposes of the case or grants relief from the stay." *Middle Tennessee News Co., Inc.*, 250 F.3d at 1082.

What is critical here is the scope of the automatic stay "engaged" by Crestland Cooperative's bankruptcy petition, because Crosser, the party asserting that the stay bars the present action against him, is not the debtor in the bankruptcy proceedings. The Fifth Circuit Court of Appeals has explained, "'By its terms the automatic stay applies only to the debtor, not to co-debtors under Chapter 7 or Chapter 11 of the Bankruptcy Code nor to co-tortfeasors.'" *Reliant Energy Servs., Inc.*, 349 F.3d at 825 (quoting *GATX Aircraft Corp.*, 768 F.2d at 716). Therefore, "'[s]ection 362 is rarely ... a valid basis on which to stay actions against non-debtors.'" *Id.* (quoting *Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir.2001)).

▮ Notwithstanding the plain terms of § 362, the Eighth Circuit Court of Appeals has noted that "[s]ome courts have acknowledged that under limited circumstances where an identity of interest exists between a debtor and a third party non-debtor, a bankruptcy court's automatic stay might also apply to property of the third party non-debtor. *Stephen Inv. Securities, Inc. v. SEC*, 27 F.3d 339, 342 n. 5 (8th Cir.1994) (citing *A.H. Robins, Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.1986), and *In re North Star Contracting Corp.*, 125 B.R. 368, 370–71 (S.D.N.Y.1991)); *accord Reliant Energy Servs., Inc.*, 349 F.3d at 825 ("[A]n exception to this general rule does exist, and a bankruptcy court may invoke § 362 to stay proceedings against nonbankrupt co-defendants where 'there is

such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'") (quoting *A.H. Robins Co.*, 788 F.2d at 999). However, the Eighth Circuit Court of Appeals observed that, even if it were to acknowledge this limited exception, it would not find sufficient identity of interest between a debtor securities trading company and a non-debtor "control person" for the debtor. *Id.* Similarly, the Fifth Circuit Court of Appeals has explained that circumstances do not exist to extend the stay to a non-debtor where "no claim of a formal tie or contractual indemnification had been made to create an identity of interests between the debtor and nondebtor" or where the non-debtor was simply "a surety." *Reliant Energy Servs., Inc.*, 349 F.3d at 825. Rather, there must be a "joint obligation" of the non-debtor to cover the debts of debtor for the automatic stay to extend to the non-debtor. *Id.* at 826.

### b. Scope of Crestland Cooperative's automatic stay

Crosser's assertions notwithstanding, the claims against him in the present action are not barred by the § 362 automatic stay in Crestland Cooperative's bankruptcy. First, by its terms, § 362 does not apply to a non-debtor such as Crosser. *See* 11 U.S.C. § 362(a) (providing for an automatic stay of various kinds of actions "against the debtor"); *accord Reliant Energy Servs., Inc.*, 349 F.3d at 825 ("'By its terms the automatic stay applies only to the debtor, not to co-debtors under Chapter 7 or Chapter 11 of the Bankruptcy Code nor to co-tortfeasors.'") (quoting *GATX Aircraft Corp.*, 768 F.2d at 716). Moreover, this is not one of those rare instances in which the stay might nevertheless apply to the non-debtor. *See id.*

("'Section 362 is rarely . . . a valid basis on which to stay actions against non-debtors.'") (quoting *Arnold,* 278 F.3d at 436). The Bondholders' First Amended Complaint does not show, and Crosser does not assert, that Crosser has the necessary "identity of interest" with Crestland Cooperative for actions against him to be barred by the automatic stay on proceedings against Crestland Cooperative. *See Stephen Inv. Securities, Inc.,* 27 F.3d at 342 n. 5 (recognizing these limited circumstances as extending the automatic stay to a non-debtor). There is no suggestion in the present record that there is a "formal tie," "contractual indemnification," or "joint obligation" between Crestland Cooperative and Crosser to create the necessary "identity of interest." *See Reliant Energy Servs., Inc.,* 349 F.3d at 825 (suggesting that there is no "identity of interest" in the absence of such circumstances). What is alleged here is that Crosser is subject to liability for wrong-doing in the Crestland Cooperative bond sales, because he is a "control person." *See* First Amended Complaint, Counts 28 & 35. However, the Eighth Circuit Court of Appeals has expressly rejected the sufficiency of such circumstances to establish the necessary "identity of interest," even if that court were to recognize the "identity of interest" exception as the law of this circuit. *Stephen Inv. Securities, Inc.,* 27 F.3d at 342 n. 5.

Thus, the court finds no valid basis, on the present record, to extend to Crosser the automatic stay arising from Crestland Cooperative's bankruptcy. Consequently, the automatic stay arising from Crestland Cooperative's bankruptcy stands as no "insuperable bar" to the Bondholder's action against Crosser. *See Parnes,* 122 F.3d at 546 (considering whether there is an "insuperable bar to relief" on the claim, justifying dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted); *Frey,* 44 F.3d at 671 ("A

motion to dismiss should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.") (internal quotation marks and ellipses omitted).

#### c. *"Assets of the bankruptcy estate" bar*

■ Crosser also argues that the Bondholders are seeking the same assets sought from him by the bankruptcy trustee for the Crestland Cooperative bankruptcy estate on the basis of alleged preferential transfers, but that those assets already "belong to" the Crestland Cooperative bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1) and, as such, cannot be reached owing to the automatic stay provided by § 362(a)(3). Section 362(a)(3) does impose an automatic stay on "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Furthermore, § 541(a)(1) does identify as property of the estate "all legal or equitable interests of the debtor in property as of the commencement of the case." *Id.* at § 541(a)(1). It is also true that "property of the debtor subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier v. IRS,* 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990).

Nevertheless, the court agrees with the Bondholders that there are no allegations in their First Amended Complaint that they are seeking specific assets of Crosser, let alone assets that may have come to Crosser by way of a preferential transfer from Crestland Cooperative. The absence of such allegations or any evidence that

what is sought is such assets is fatal to Crosser's argument. Moreover, even if the Bondholders were seeking "the same" assets from Crosser as the trustee in the Crestland Cooperative bankruptcy, those assets do not become part of the bankruptcy estate until the trustee recovers them. *See In re Thielking*, 163 B.R. 543, 545 (Bkrtcy.S.D.Iowa 1994) (property that has allegedly been improperly transferred by the debtor prior to the commencement of the bankruptcy "should not be considered property of the estate until a judicial determination is made that a fraudulent [or preferential] transfer has occurred and the trustee has recovered the property."). Consequently, § 362(a)(3) does not bar any action by the Bondholders to recover those assets until and unless the trustee has recovered them. *See* 11 U.S.C. § 362(a)(3) (barring "any act to obtain possession of property of the estate"). Thus, Crosser's second argument for dismissal for failure to state a claim upon which relief can be granted also fails.

### III. CONCLUSION

Venue in this action is proper as to all defendants and all claims owing to the "special" venue provision for federal securities claims, 15 U.S.C. § 78aa. Furthermore, the automatic stay in bankruptcy, 11 U.S.C. § 362(a), stands as no bar to the actions against Crestland Defendant Crosser.

THEREFORE, the Crestland Defendants' November 13, 2003, Motion To Dismiss (docket no. 28) is **denied in its entirety.**

FURTHERMORE, the parties are directed to contact the office of United States Magistrate Judge Paul A. Zoss in Sioux City, Iowa, to set up a scheduling conference, so that initial disclosures and discovery can now proceed in this matter.

**IT IS SO ORDERED.**